UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| ARTHUR CLEVELAND, | ) | |
| --- | --- | --- |
| Movant, | ) | 04 C 5237 |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| UNITED STATES OF AMERICA, | ) | |
| Respondant. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Movant Arthur Cleveland's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. For the following reasons, the Motion is denied.

## I. INTRODUCTION

### A. Facts

In April 2002, Arthur Cleveland ("Cleveland") and his co-defendant Eduardo Anderson ("Anderson") agreed to purchase phenylmagnesium bromide ("PB") from a certain individual. This individual was a cooperating witness ("CW") for the United States government. Cleveland and Anderson (collectively "Defendants") agreed to purchase a quantity of PB from the CW for approximately $11,480. In late April 2002, Defendants met the CW in Chicago, and paid this individual approximately $4,000 as a down payment on the PB. On May 3, 2002, Defendants again met with the CW, paid the CW approximately $7,400, and received from the CW a box containing PB. Defendants intended to use the PB to manufacture approximately twelve gallons

1

of phencyclidine ("PCP"), a Schedule III Narcotic Drug Controlled Substance. No strangers to trafficking in PCP, Defendants had engaged in transactions in which Cleveland had supplied Anderson with at least four gallons of PCP prior to April 2002. During the time Cleveland was engaged in the conduct discussed above, he was released on bond in another criminal complaint before the Northern District of Illinois, United States v. Cleveland, 01 CR 1119.

In addition to the above conduct, Cleveland was also engaged in an earlier conspiracy to manufacture and distribute PCP. Between 2000 and February 2002, Defendant was repeatedly supplied by Shelby Parchman and Arnold Chapman with various chemicals used in the manufacture of PCP such as piperidine, ethyl ether, cyclohexanone, potassium cyanide, and PB. After manufacturing PCP at a property located in Chicago Heights, Cleveland sold the PCP to others, including his brother Archie Cleveland and Anderson.

## B. Procedural History

On May 30, 2002, the government filed a three count Superceding Indictment charging Cleveland with knowingly and intentionally conspiring and agreeing to manufacture a controlled substance, namely in excess of one kilogram of mixtures containing PCP, in violation of 21 U.S.C. § 846 (Counts One and Two), and knowingly and intentionally possessing a listed chemical, namely ethyl ether, knowing and having reasonable cause to believe that this chemical would be used to manufacture a controlled substance, namely PCP, in violation of 21 U.S.C. § 841(c)(2) (Count Three). On September 18, 2002, Cleveland signed a written Plea Agreement in which he agreed to plead guilty to Count Two of the Superceding Indictment.

The Plea Agreement contained, *inter alia*, the following provisions. Cleveland admitted to the conduct described in part I A of this Opinion. Cleveland and the government agreed that

Cleveland was accountable for at least thirty kilograms of PCP, which made his base offense level thirty-eight under the Federal Sentencing Guidelines ("Guidelines"). Plea Ag., ¶ 7(b). The parties also agreed that Cleveland had committed this offense while on pre-trial release in case 01 CR 1119, which called for a three level increase in his offense level under the Guidelines. Id. at ¶ 7(c). In addition, Cleveland indicated that he understood that the Count to which he would plead guilty carried a mandatory minimum of ten years imprisonment and a maximum of life imprisonment. Id. at ¶ 9. Cleveland also waived his right to direct appeal and his right to file a collateral attack on his sentence, except in a specific circumstance.

> The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or its negotiation.

Id. at ¶ 13.

At sentencing, Cleveland's base offense level was the agreed upon thirty-eight. Cleveland received a three-level increase in his offense level because he committed this offense while on pre-trial release, and a three-level reduction in his offense level for acceptance of responsibility. With a Criminal History Category of III, Cleveland's Guideline range was 292-365 months. The court sentenced Cleveland to the low end of the Guideline range, 292 months.

Cleveland filed his Motion under § 2255 on August 9, 2004, and filed an Amended Supplemental Brief to this Motion on March 7, 2005. After receiving transcripts of Cleveland's

plea colloquy and sentencing hearing, the government filed its Response to Cleveland's Motion on March 21, 2006. Cleveland then filed a Supplemental Brief and Response on April 13, 2006. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of justice." See Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004). This statute states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255 ¶ 1. If the court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255 ¶ 2. In making that determination, the court must review the evidence and draw all reasonable inferences from it in a light most favorable to the Government. See United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000); Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992).

Section 2255 petitions are subject to various bars, including that of procedural default. Section 2255 petitions are "'neither a recapitulation of nor a substitute for a direct appeal.'" McCleese v. United States, 75 F. 3d 1174, 1177 (7th Cir. 1996) (citations omitted). Therefore, a

4

§ 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-Constitutional issues that could have been raised on direct appeal, but were not; and (3) Constitutional issues that were not raised on direct appeal. See Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994)).

There are two exceptions to the procedural default rule: (1) if the movant demonstrates cause for failing to raise the issue and actual prejudice resulting therefrom; or (2) the court's refusal to consider the Constitutional issue would result in a fundamental miscarriage of justice, which requires a showing of actual innocence. See Belford, 975 F.2d at 313 (collecting authority); see also McCleese, 75 F.3d at 1177-78 (discussing fundamental miscarriage of justice).

Apart from the above noted procedural bars, potential movants are prohibited from filing § 2255 motions where they have expressly agreed to waive their right to do so in their plea agreements. The Seventh Circuit approves of these waivers, with one limited exception. Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000) ("we reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to sec. 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver") (quoting Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999)). In light of these principles, the court examines Cleveland's Motion.

## B. Cleveland Has Expressly Agreed to Waive His Right to File a § 2255 Motion

As the court has indicated in section I B of this Opinion, Cleveland has expressly agreed to waive his right to file a § 2255 motion. Paragraph 13 of his Plea Agreement reads in part,

5

> The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or its negotiation.

Cleveland has made no claim that his agreement to this waiver was involuntary. In fact, during his plea colloquy, Cleveland affirmatively indicated that he had discussed this waiver with his attorney, that he understood it, and that he was entering into this agreement voluntarily.

> THE COURT: Now, with respect to paragraph 13 on page 10, Mr. Cleveland, it says . . . 'The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code 2255.' This is often called a habeas corpus. Paragraph 13 goes on to say: 'The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel which relates directly to this waiver or to its negotiation.' When you talked to Mr. Banks on the seven or eight occasions you did talk to him, did he explain this paragraph 13 to you?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand the significance of it?
> THE DEFENDANT: Yeah.
> . . .
> THE COURT: Are you entering into this agreement because this is what you want to do?
> THE DEFENDANT: Yeah.

Plea Colloquy, at 21-22. Moreover, Cleveland has not made any claim that his attorney was ineffective "with respect to those discrete claims which relate directly to the negotiation of the waiver." See Jones, 167 F.3d at 1145. The court will therefore enforce Cleveland's waiver of his right to file a § 2255 motion.

The court has thus determined dispositively that Cleveland's § 2255 Motion is barred under the terms of his Plea Agreement. However, with an abundance of caution, the court will address this Motion on its merits.

## C. Cleveland's Claims for Relief under § 2255

Cleveland's pro se § 2255 petition raises three arguments. First, Cleveland asserts that his attorney was constitutionally ineffective. Second, he argues that his guilty plea was not voluntary, knowing, or intelligent. Finally, he asserts that he was not mentally competent to understand the charges against him.

### 1. *Ineffective Assistance of Counsel*

In order to establish that his counsel was ineffective, Cleveland must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694). An ineffective assistance of counsel claim may be brought in a § 2255 motion, regardless of whether the claim was raised on appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

To support his claim of ineffective assistance of counsel, Cleveland asserts that his attorney promised him that he would receive only the statutory minimum sentence, ten years imprisonment. Cleveland, however, submits no details or evidence to support this assertion. "[M]ere allegations of promises made by counsel are insufficient to support a claim of ineffective assistance." United States v. Rodriguez-Luna, 937 F.2d 1208, 1214 (7th Cir. 1991).

> [A] defendant must do more than merely allege a promise by counsel; he or she must provide some evidence that allows the court to meaningfully assess his or her claim. A defendant in such a situation might allege . . . what the terms of the alleged promises by counsel were; when, where, and by whom such promises were made; and the precise identity of any witnesses to the promise.

Key v. United States, 806 F.2d 133, 139 (7th Cir. 1986). In this case, Cleveland "has failed to supply evidence to help a court begin this inquiry." See Rodriguez-Luna, 937 F.2d at 1214. Cleveland has thus not shown that counsel's performance was deficient. See Wiggins, 539 U.S. at 521.

Moreover, at the plea colloquy, Cleveland indicated that there was no other agreement between himself, his attorney, and the government.

> THE COURT: Is this agreement the only agreement between you, your attorney, and the government?
> THE DEFENDANT: Yeah.
> THE COURT: Is there any other agreement except for what is contained in this written agreement?
> THE DEFENDANT: No.

Plea Colloquy, at 15. Cleveland's allegations of ineffective assistance of counsel therefore fail.

### 2. Knowing and Voluntary Plea

Cleveland's assertions that his guilty plea was not knowing and voluntary are belied by the record. During Cleveland's plea colloquy, he informed the court that he was alert, and aware of what he was doing.

> THE COURT: The reason I'm asking these questions is to make sure that you are clear minded this morning . . . and that you know what you are doing. Are you clear minded?
> THE DEFENDANT: Yeah, a little bit. Yeah.
> THE COURT: And you know what you are doing?
> THE DEFENDANT: Right.

8

Plea Colloquy, at 5. Cleveland then informed the court that he had gone over the Plea

Agreement with his attorney, and signed that agreement.

> THE COURT: Did you go over this written agreement with Mr. Banks, your attorney?
> THE DEFENDANT: Right.
> THE COURT: Are you able to read?
> THE DEFENDANT: Yeah.
> THE COURT: As part of going over this written agreement with Mr. Banks, did he explain the terms of this agreement to you?
> THE DEFENDANT: Right.
> THE COURT: And when you had any questions, did he answer them for you?
> THE DEFENDANT: Right.
> . . .
> THE COURT: Now, did you sign the last page of this written plea agreement?
> THE DEFENDANT: Right.
> THE COURT: Is that your signature on the last page?
> THE DEFENDANT: Yeah.
> THE COURT: And Mr. Banks, your attorney, signed it as well?
> THE DEFENDANT: Right.

Id. at 13-15. Next, Cleveland informed the court that he was not being forced to enter into this

plea agreement, and that he was doing so after consulting with his attorney and thinking the

matter over for himself.

> THE COURT: Have you entered into this agreement voluntarily?
> THE DEFENDANT: What did you say now?
> THE COURT: Have you entered into this agreement because this is what you want to do?
> THE DEFENDANT: Yeah.
> THE COURT: Are you being threatened in any way?
> THE DEFENDANT: No.
> THE COURT: Are you being pushed or shoved or squeezed into this agreement?
> THE DEFENDANT: No.
> THE COURT: Do you know what you are doing?
> THE DEFENDANT: Yeah.
> THE COURT: Do you understand what you are doing?
> THE DEFENDANT: Right.

THE COURT: Have you thought about this?
THE DEFENDANT: Yes.
THE COURT: How long have you been in custody?
THE DEFENDANT: About six months.
THE COURT: Have you had enough time to think about all of this?
THE DEFENDANT: Yeah.
THE COURT: Have you understood the things that I have said to you?
THE DEFENDANT: Yeah.
THE COURT: And when you talked with Mr. Banks on those seven or eight occasions, if not more, did he explain to you what your rights are and what you would be giving up by pleading guilty?
THE DEFENDANT: Right.
THE COURT: Did he tell you basically the same things that I just told you, but using other words and language?
THE DEFENDANT: Yeah.
THE COURT: Do you have any questions on anything that I have said?
THE DEFENDANT: No.
THE COURT: Have you understood everything?
THE DEFENDANT: Yes.

Id. at 16-17.

A court's only option in determining whether a plea is voluntary and intelligent is generally to ask the defendant a series of questions in open court. "The only rational manner in which a judge may determine whether a plea is knowing and voluntarily made, is to observe the defendant's demeanor and responses to the court's questions and to rely on the defendant's sworn answers. The court can best expose the defendant's state of mind on the record through personal interrogation." United States v. Ellison, 835 F.2d 687, 693 (7th Cir. 1987). In this case, the court engaged Cleveland in a lengthy plea colloquy in which Cleveland repeatedly asserted that he had discussed matters with his attorney, that he knew what he was doing, and that his plea was a voluntary one. Cleveland's assertion that his plea was not knowing or voluntary therefore fails.

10

### *3. Competence*

Cleveland's assertion that he was not mentally competent to understand the consequences of his plea is similarly meritless. The record in this case contains no indication that Cleveland could not understand the charges against him, or was unable to cooperate with his attorney in his defense. Moreover, as the court has already noted, Cleveland indicated to the court during his plea colloquy that he was aware of what he was doing, and understood the significance of his actions. Plea Colloquy, 3-5, 23-24. Cleveland's arguments based on his alleged lack of mental competence therefore fail. See United States v. Martinez, 169 F.3d 1049, 1054 (7th Cir. 1999) ("Because of the great weight we place on these in-court statements, we credit them over [movant's] later claims.").

### III. CONCLUSION

For the foregoing reasons, Cleveland's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

Dated: May 24, 2006